CHARLES W. SWITZER AND WILLIAM H. SWITZER v. JOHN R. GARDNER AND ADELBERT N. McALLISTER.

*Unsigned lease made valid by change of possession—Specific performance of exhausted lease.*

Change of possession of leased property takes the agreement for the lease out of the statute of frauds, if the lease has not been signed.

Specific performance of an expired lease may be granted where the parties may have rights requiring its determination.

Appeal from St. Joseph.  Submitted June 5.  Decided June 10.

BILL TO CANCEL A LEASE.  Defendants appeal.

*Loveridge & Barlow* for complainants.

*O. J. Fast* and *John B. Shipman* for defendants.  A lease once operative cannot be surrendered or cancelled by verbal agreement between the parties, Comp. L., § 4692; Taylor's L. & T., § 509; a verbal agreement to alter a lease or substitute another for it, is void, Comp. L., § 4694; *Abell v. Munson,* 18 Mich., 306.

CAMPBELL, C. J.  The bill in this case was filed to cancel a lease and establish a different arrangement. Complainants in the summer of 1876 owned mill property in St. Joseph county.  Gardner had, as he claimed, an undivided half interest in a mill at Union City, Branch county, the remaining interest belonging to one Dix. This latter property was very heavily encumbered.  A bargain was made in the form of a lease whereby complainants were to lease to Gardner their mill in St. Joseph county, and other lands and premises with it for three years from September 16, 1876, at the rent of what was agreed on as seven hundred dollars a year, but the whole three years' rent was to be paid in full by Gard-

ner's deeding to complainants an undivided half of the Union City mill property, said deed to be delivered on the taking possession by Gardner of the leased property. The lease could be ended by the sale of the leased property, and in that case the rent to be refunded was $700 a year.

The bill claims that the property at Union City was not then in Gardner, and that finding he could not give possession, and that there was danger of foreclosure and loss of possession, the original lease was abandoned, and a new arrangement made changing some of the terms of the lease and providing that the lease should end whenever the foreclosure title should destroy complainant's possessory rights. This new agreement was never signed, but Gardner obtained a deed to complainants from Dix, the holder of title, to all the equity of redemption, and complainants put him in possession of the leased property, some time in the middle of October, 1876.

The original lease when executed was left with Mr. Fast who had drawn it. He also drew the second lease on which it is claimed the parties had agreed. Some time after the exchange of possession one of complainants obtained the first lease from Fast, and Gardner in turn got it from the place where it had been left, and assigned an interest in it to defendant McAllister. The remaining facts, so far as material, will be referred to further.

The court below granted the relief prayed.

We are entirely satisfied the original lease was abandoned. There is no satisfactory reason given why, if it were otherwise, the possession was not given and taken earlier. It does not appear, as fully as might be wished, what was the true condition of Gardner's title, and what claim he actually had in the Union Mills, and how he procured—if he did himself procure—the conveyance from Dix to complainants. It is beyond doubt that there was some new agreement, and that the second written lease, dated October 16, 1876, was made to carry it out. It is

also clear that when presented to him for signature Gardner only objected to some special particulars which complainants were willing to correct. If this was the fact, the failure to sign the written lease did not destroy the effect of the previous agreement which had been practically executed in part by exchange of possession, which took it out of the statute of frauds. The first lease was laid aside.

While the testimony is not as full and precise as it should be, we think there was enough to justify the court below in finding, as it did, that the lease was to end when the mortgage title to the Union Mills was finally foreclosed, as it was shown to have been. We think the court also correctly inferred the terms of the lease agreed on. And while it is certainly anomalous to grant relief in the form of specific performance of a lease which has expired, yet the parties may have some rights requiring its determination, and it can do no harm. The main relief was the cancellation of the first lease, which was properly ordered.

Without going at large into all the direct and collateral circumstances, we see no reason to doubt the correctness of the view taken by the court below on the merits.

The decree must be affirmed with costs.

The other Justices concurred.