RENAISSANCE RESTAURANT AND LOUNGE, INC., Plaintiff and Counter-defendant-Appellee, v. PETER GAVRILOS, Adm'r of the Estate of George Gavrilos, a/k/a George Gavrilos, Deceased, Defendant and Counterplaintiff-Appellant.

Second District   Nos. 2—89—0608, 2—89—0800 cons.

Opinion filed April 24, 1990.—Modified on denial
of rehearing May 24, 1990.

Keith E. Roberts, Sr., and Robert R. Verchota, both of Donovan & Roberts, P.C., of Wheaton, and Edward A. Bartosch and Peter J. Best, both

of Park Ridge, for appellant.

Aldo E. Botti and John R. Wimmer, both of Botti, Marinaccio, DeSalvo & Pieper, Ltd., of Oak Brook, and George D. Karcazes, of Martin & Karcazes, Ltd., of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant and counterplaintiff, Peter Gavrilos, administrator of the estate of George Gavrilos, deceased (Gavrilos), appeals from an order of the circuit court of Du Page County, following submission of the case to the trial judge on issues of law, denying his request to terminate his lease with plaintiff and counterdefendant, Renaissance Restaurant & Lounge, Inc. (Renaissance), and declaring as valid the original, unaltered lease between the parties.

On appeal, Gavrilos contends that Renaissance's unauthorized, material alteration of a duplicate lease rendered that instrument and the original, unaltered lease void and unenforceable.

During his lifetime, George Gavrilos owned certain property in Elk Grove Village, Illinois. In 1980, he leased the property to 2310 Elmhurst Road, Inc. In 1982, 2310 Elmhurst Road, Inc., assigned the lease to Renaissance. During the term of the lease, George Gavrilos died, and Peter Gavrilos was appointed administrator of his estate. A dispute arose between Renaissance and Gavrilos concerning certain past-due rent and tax payments, and Gavrilos served Renaissance with a notice of default. Renaissance filed a suit for injunctive and declaratory relief against Gavrilos in the circuit court of Cook County. As relevant to this appeal, the complaint alleged that Gavrilos had failed to make necessary repairs to the roof and that this had resulted in damage to the premises and Renaissance's business. Renaissance requested that Gavrilos be placed under a temporary restraining order enjoining him from terminating Renaissance's right to possession of the premises and further requested that Gavrilos be required to repair the roof. A copy of the lease was attached to the complaint. This lease states, among other things, that lessor accepts responsibility for repair of the roof and the parking lot.

The circuit court of Cook County denied the request for a temporary restraining order. The case was subsequently transferred to the circuit court of Du Page County, the actual location of the subject premises. When the case was transferred to Du Page County, Gavrilos filed a forcible entry and detainer action alleging that Renaissance owed over $34,400 for rent and $9,400 for taxes, and the cases were consolidated.

Renaissance filed an amended complaint asking for a declaration of the parties' rights under the lease and under a certain note and security agreement, a permanent injunction restraining Gavrilos from terminating Renaissance's right to possession, and a mandatory injunction requiring Gavrilos to repair the roof and the parking lot. Renaissance also filed a motion for a mandatory injunction compelling Gavrilos to fix the roof and the parking lot. In response to the motion for a mandatory injunction, Gavrilos asserted that the part of the lease dealing with responsibility for repairs to the roof and the parking lot was ambiguous and unclear. Gavrilos later filed a supplemental response to the motion stating that he had found the lease in question and that his lease states that it is the lessee, not the lessor, who is responsible for repairs to the roof and the parking lot. The court granted Renaissance leave to repair the roof and the parking lot "without prejudice to the issue of which party is responsible to pay for the repairs and whether said repairs are necessary."

Gavrilos filed an answer and a counterclaim and, subsequently, filed an amended answer, including affirmative defenses, and an amended counterclaim. In the affirmative defenses, Gavrilos restated that there are conflicting versions of the lease, asserted that the lease attached to Renaissance's complaint was not the lease executed by the parties, and alleged that Renaissance altered the document without the consent or knowledge of George Gavrilos. Gavrilos stated that the alteration was material, that it rendered the lease unenforceable and voidable by him, and that he elected to declare the lease void. Neither the original nor the amended counterclaim mentions the alteration of the lease as a ground for relief, referring primarily to the past-due rent and tax payments. In the original counterclaim, however, Gavrilos did request that Renaissance be ordered to pay for all repairs made since Renaissance took possession under the lease and that Renaissance be ordered to vacate the premises. Gavrilos attached a copy of his version of the lease to the counterclaim.

Renaissance responded to the affirmative defenses by admitting that Gavrilos' lease was the lease originally executed by the parties; Renaissance asserted, however, that the Gavrilos lease was amended by "the execution of the lease attached as Exhibit B to Renaissance's First Amended Complaint." Renaissance denied that the changes were made without the consent and knowledge of George Gavrilos. The court granted Gavrilos leave to depose one of Renaissance's attorneys, Hercules Bolos, for the purpose of determining the circumstances surrounding the execution of the two leases.

Gavrilos filed a second amended counterclaim which does not

mention the alteration of the lease or the cost of repairs, but refers only to the past-due rent and taxes. As relevant to this appeal, Renaissance responded that Gavrilos' lease is a true and correct lease which was executed by the parties; however, that lease was superseded by Renaissance's lease.

Apparently, the parties subsequently reached agreement on most of the issues between them, as they stipulated that an unaltered, duplicate original lease was in existence. They agreed to present the case to the trial judge on an issue of law: whether, even if Renaissance had altered a duplicate original of the lease without the consent of Gavrilos, Renaissance could still enforce its rights under the unaltered, duplicate original lease.

The trial court found the unaltered, original lease to be a valid lease between the parties which could be enforced by Renaissance.

■ Initially we note that the issue of whether Gavrilos had the right to terminate the lease and require Renaissance to vacate the premises based on Renaissance's misconduct in materially altering one copy of the lease without the consent of the lessor and then seeking to enforce the altered lease in court was properly before the trial court. Gavrilos generally raised the issue as part of his affirmative defense and in his response to Renaissance's motion for a permanent injunction. Furthermore, Gavrilos attached a copy of the unaltered lease to his amended counterclaim.

On appeal, Gavrilos' position is that Renaissance attempted to perpetrate a fraud by filing a verified complaint seeking to enforce an intentionally and materially altered lease and that such action renders the altered lease and the original, unaltered lease voidable. Renaissance contends that, where there is an unaltered original of an instrument, the alteration of a duplicate original does not affect the operation and validity of the unaltered original, and even an unauthorized alteration will not forfeit the altering party's right to enforce the terms of the unaltered original.

■ The trial court agreed with Renaissance and denied Gavrilos' request for an order terminating the lease and requiring Renaissance to vacate the premises.

The general rule has been stated as follows:

> "[W]here a written executory contract has, by one of the parties thereto without the consent of the other, been altered from its condition when signed and delivered, such alteration, if material,—that is, if it so changes its terms as to give it a different legal effect from what it originally had,—renders the instrument void and destroys it as a basis of recovery, either in its

altered form or in its original condition, by the party making the alteration." *Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 547, 89 N.E.2d 392, 398.

There is an exception to this general rule which provides:

"Where an instrument has been executed in duplicate, the unauthorized alteration of one of the copies does not ordinarily affect the validity, operation, or effect of the other copy. While in such a case it might be said that the instrument in which the alteration is made is an altered instrument, nevertheless the contract, or the evidence thereof, is not affected, since it is still evidenced by an unaltered instrument—that is, by the duplicate which was not altered." 4 Am. Jur. 2d *Alteration of Instruments* §10, at 12 (1962) (citing cases where fraudulent or knowing and unconsented to alteration of one copy of an instrument did not prevent the party so altering from sustaining the agreement based on an unaltered copy).

See *Jones v. Hoard* (1894), 59 Ark. 42, 26 S.W. 193 (knowing and unconsented to alteration of duplicate lease does not render other duplicate lease unenforceable); see also 15 S. Williston, Contracts §1910, at 842 n.8 (3d ed. 1972).

In Illinois, the rule has been similarly stated, although in a different factual context than the above authorities:

"If any changes were made in the duplicate they would not invalidate the original." *Singer v. Murphy* (1930), 338 Ill. 620, 629, 170 N.E. 777, 781.

There is no dispute that the copy of the lease was altered sometime after its execution and the alteration was material because it changed the legal effect of the original terms by shifting responsibility for the cost of repairs of the roof and parking lot from the lessee to the lessor. It is equally undisputed that a duplicate, unaltered lease was in existence in the possession of an attorney for Renaissance. Consequently, under the exception to the general rule, the unaltered duplicate lease evidences the true agreement between the parties and as such is valid and enforceable.

While we recognize that Renaissance arguably may have possessed an improper motive in submitting the altered lease as an exhibit with its complaint, a fact we are careful to note has not yet been established on this record, we do not perceive the question of Renaissance's motive or intent to be pertinent to the issue raised by Gavrilos. As there is a distinction between an unauthorized alteration of the lease and its improper use as part of the pleadings, a distinction not clearly enunciated in Gavrilos' brief, the alternatives available to

Gavrilos are distinct. Gavrilos may very well have recourse for Renaissance's conduct in submitting the materially altered lease as part of its pleadings, an issue that is not before us, but this would not include rendering the lease voidable.

Because of our disposition, we need not address the alternative grounds for affirmance urged by Renaissance.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and DUNN, JJ., concur.